IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN KELLY, QUENTIN MONDAY, and RANIQUE WILLIAMS, on behalf of themselves and those similarly situated, | : <br> : <br> :   2:23-cv-02854-HB <br> : <br> : |
| Plaintiffs, | : |
| v. | : <br> : |
| J&J SERVICE SOLUTIONS LLC, | : <br> : |
| Defendant. | : <br> : |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR APPROVAL OF FLSA SETTLEMENT**


Date:  August 2, 2024

Peter Winebrake
Michelle L. Tolodziecki
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

Josef Buenker
The Buenker Law Firm
2950 North Loop West, Suite 500
Houston, Texas 77092
(866) 283-6537

*Attorneys for Plaintiffs*

**<u>TABLE OF CONTENTS</u>**

A.    The FLSA Claim.  (Pg. 1)

B.    J&J's Defense.  (Pg. 2)

C.    Conditional Certification and Formation of the FLSA Collective.  (Pg. 4)

D.    The Settlement.  (Pg. 5)

E.    The Settlement May Be Approved in a Single Step.  (Pg. 6)

F.    Approval of the Settlement is Warranted.  (Pg. 7)

    1.    The Settlement Resolves a *Bona Fide* FLSA Dispute.  (Pg. 8)

    2.    The Settlement is "Fair and Reasonable."  (Pg. 8)

    3.    The Settlement "Furthers the FLSA's Implementation.  (Pg. 11)

    4.    Approval of the Attorney's Fees/Expenses is Warranted.  (Pg. 12)

    5.    Approval of the Service Awards is Warranted.  (Pg. 14)

G.    Conclusion.  (Pg. 16)

John Kelly ("Kelly"), Quentin Monday ("Monday"), and Ranique Williams ("Williams") and Defendant J&J Service Solutions LLC ("J&J") have settled this Fair Labor Standards Act ("FLSA") collective action for $505,000 per the attached Collective Action Settlement Agreement ("Agreement").  *See* Doc. 36-1.[1]  The settlement resolves the wage and hour claims of Kelly, Monday, Williams and 128 other individuals who have affirmatively joined this action per the FLSA's collective action mechanism.

Most district judges in the Third Circuit review FLSA collective settlements for fairness. *See* Pp. 7-8 *infra*.  Here, judicial approval is warranted for the reasons described in this brief:

**A.      The FLSA Claim.**

J&J is a Lancaster County business that, *inter alia*, employs "experienced Merchandising professionals" to provide customer retail stores and other customers with "merchandising services" such as "Merchandise receiving," "Planogram implementation," "Stocking shelves," "Surveys and audits," "POP placement," "Shelf labeling," and "Display assembly."[2]  This work is performed by employees who travel to customer locations and perform such merchandising services.  We'll call these employees as "**merchandisers**."

Kelly, Monday, and Williams were employed by J&J as merchandisers.  *See* Complaint (Doc. 1) at ¶¶ 13, 15, 17.  They allege that J&J paid merchandisers a fixed amount of compensation for each day they work regardless of the number of hours worked.  *See id.* at ¶ 12, 13, 15, 17.  This is known as a "day-rate" pay plan.  *See id.* at ¶ 12 (citing 29 C.F.R. § 778.112). For example, J&J paid Williams "$150 per day."  *Id.*

---

[1]  The Agreement attached to the accompanying motion does not include Exhibit A to the Agreement, which is a spreadsheet listing proposed payments to each individual covered by the settlement.  *See* Doc. 35-1.  Accordingly, the Court is referred to the version of the Agreement accompanying this brief.  *See* Doc. 36-1.  This version includes the payment spreadsheet.

[2]  *See* https://jnjservicesolutions.com/merchandising/ (last visited 7/31/24).

Kelly, Monday, and Williams further allege that J&J generally did not pay merchandisers any additional overtime wages for hours worked over 40 per week.  *See* Complaint (Doc. 1) at ¶¶ 14, 16, 18.  This purportedly violated the FLSA, which generally entitles employees to be paid overtime wages equaling "one and one-half times" their regular pay rate for hours worked over 40 per week.  *See id.* at Count I (citing 29 U.S.C. § 207(a)(1)).  When employees are paid on a day-rate basis, their extra overtime wages generally are calculated as follows:  First, the employee's "regular hourly rate" is determined by dividing his/her total weekly compensation by his/her total hours worked.  *See* 29 C.F.R. § 778.112.  Next, the employee is "entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek."  *Id.*[3]  Kelly, Monday, and Williams contend that they and other merchandisers should have received overtime wages pursuant to this methodology.

### B.    J&J's Defense.

J&J denies liability.  *See generally* Answer (Doc. 6).  While J&J pleads various affirmative defenses, its primary defenses are summarized below:

**First**, J&J asserts that merchandisers are overtime-exempt under the FLSA's "outside sales" exemption, which applies to employees: "(1) Whose primary duty is: (i) making sales within the meaning of section 3(k) of the [FLSA], or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer" ***and*** "(2) Who is customarily and regularly engaged away from the employer's place

---

[3]   The following exemplifies the methodology for calculating the overtime wages owed to day-rate employees:  Frank Jones is a day-rate employee earning $150 per day.  During a particular week, he works six days, earning a total of $900 (6 *multiplied by* $150).  If, during this particular week, Mr. Jones worked a total of 45 hours, then his "regular hourly rate" for the week stands at $20 ($900 *divided by* 45), and he is owed $10 ($20 *divided by* 2) for each of his 5 overtime hours.  In other words, Mr. Jones is owed an extra payment of $50 (5 *multiplied by* $10) for his overtime work.

or places of business in performing such primary duty."  29 C.F.R. § 541.500(a); *see* Answer (Doc. 6) at Second Affirmative Defense.

**Second**, J&J disagrees with this lawsuit's characterization of the relevant compensation plan as constituting a "day-rate" without overtime pay.  According to J&J, each merchandiser was generally expected to work 10 hours per day and, as such, each daily payment to a merchandiser consisted of hourly straight-time payments for the first 8 work hours *plus* hourly "time and one-half" payments for the additional 2 work hours *plus* a *per diem* bonus payment of $30.

**Third**, J&J argues that merchandisers' unpaid overtime wages – even if legally owed – are limited because the merchandisers often worked fewer than 40 hours per week.  *See*, *e.g.*, *Rosano v. Township. of Teaneck*, 754 F.3d 177, 188-90 (3d Cir. 2014) (affirming district court finding that employees failed to present sufficient evidence of unpaid overtime hours).  In this regard, J&J is poised to present evidence that, during many weeks, Merchandisers spent substantial time either (i) not working due to the early completion of the store "remodel" assignments or (ii) traveling to and from their home community.  *See* 29 C.F.R. § 785.39 (addressing limited compensability of "[t]ravel away from home community").

**Fourth**, the FLSA generally limits an employee's recovery to the period starting *two years* prior to date on which the employee commences (or affirmatively joins) the action.  *See* 29 U.S.C. § 255(a).  This two-year limitation period is extended to three years *only if* the plaintiff proves a "willful violation of the FLSA.  "Willfulness under the FLSA is established where 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'"  *Stone v. Troy Construction, LLC*, 935 F.3d 141, 150 (3d Cir. 2019) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  Demonstrating a

"willful" FLSA violation can be difficult.  *See*, *e.g.*, *Souryavong v. Lackawanna County*, 872

F.3d 122, 126-27 (3d Cir. 2017) (affirming district court's non-willfulness finding).[4]  Mindful of

the caselaw, J&J asserts that any overtime wages recovered in this action must be limited to the

two-year limitations period.

### C.    Conditional Certification and Formation of the FLSA Collective.

In October 2023, the Court entered a stipulated order "conditionally certifying" the

following FLSA collective:  "All individuals who were employed by [J&J] and who, during any

week within the past three years, were paid by Defendant or any related business entity to

perform merchandising work at any retail stores during any time since December 1, 2020."  Doc.

17 at ¶ 1.[5]  The Court also endorsed a process by which the merchandisers received notice of the

lawsuit and were allowed to join the lawsuit.  *See id.* at ¶¶ 3-5.

Notice ensued, and, by the end of the notice period, 128 current/former merchandisers (in

addition to Kelly, Monday, and Williams) had joined the lawsuit by returning Court-approved

Consent to Join Forms ("consent forms").  *See* Docs. 13, 15, 18-20, 22, 24-27.[6]  As is

commonplace in FLSA collective litigation, each of these individuals acknowledged the

following via the consent form:  "I understand that I will be bound by the judgment of the Court

on all issues in this action *including the fairness of any settlement*."  *See id.* (emphasis supplied).

---

[4]  *See also Mogel v. City of Reading*, 2021 WL 4989842, 2021 U.S. Dist. LEXIS 206989, *11
(E.D. Pa. Oct. 27, 2021) (plaintiff must prove defendant was "specifically aware that its
compensation scheme . . . could violate the FLSA"); *Lugo v. Farmer's Pride, Inc.*, 802 F. Supp.
2d 598, 618 (E.D. Pa. 2011) ("If the employer acted 'reasonably,' or even if the employer acted
'unreasonably, but not recklessly, in determining its legal obligation,' then those actions are not
considered 'willful.'").

[5]  The December 1, 2020 start-date in the stipulated order was derived from the maximum three-
year limitations period available under the FLSA.  However, J&J explicitly reserved the right to
argue that a two-year limitations period applies to this action due to the lack of a "willful" FLSA
violation.  *See* Doc. 17 at ¶ 1 n. 2.

[6]  Five merchandisers joined the action prior to conditional certification.  *See* Docs. 13, 15.

Going forward, we'll refer to Kelly, Monday, Williams, and the 128 other merchandisers who returned consent forms as "plaintiffs."

> **D.    The Settlement.**

This lawsuit has been settled on behalf of the 131 plaintiffs.  The settlement requires J&J to pay a total of $505,000.  *See* Agreement (Doc. 36-1) at ¶ 2.  If the Court approves the requested $204,500 in combined attorneys' fees, litigation expenses, service awards, and settlement administration costs, the remaining $300,500 is allocated to the individual plaintiffs in the amounts specified in the Agreement.  *See* Agreement (Doc. 36-1) at ¶ 1 (defining "Payout Amount") and Ex. A (listing each plaintiff's Payout Amount).  These individual payments are based on plaintiff's lawyers' analysis of payroll data reflecting each plaintiff's pay rate and weekly days worked.  *See* Declaration of Josef Buenker ("Buenker Dcl.") (Doc. 36-2) at ¶¶ 8-9.  If the Court disapproves any portion of the requested attorneys' fees, litigation expenses, or service awards, the disapproved monies will enhance the payments to the individual plaintiffs on a *pro rata* basis.  *See* Agreement (Doc. 36-1) at pg. 2 n. 1.

Settlement Services, Inc. will administer the instant settlement.  *See* Declaration of Peter Winebrake ("Winebrake Dcl.") (Doc. 36-3) at ¶ 20 and Ex. 3.[7]  Upon approval of the settlement, the administrator will establish the settlement fund, issue the individual settlement checks and associated tax forms, and ensure that such checks/forms are delivered to each plaintiff.  *See* Agreement (Doc. 36-1) at ¶ 5.

In exchange for the above payments, each plaintiff is bound by a ***limited*** release.  *See* Agreement (Doc. 36-1) at ¶ 4.  Specifically, the Agreement's release provision states:

> Upon passage of the Approval Date and Defendant's fulfillment of its payment obligations under paragraph 2, each Plaintiff (on behalf of

---

[7]  The administrator's website can be found at: https://www.settlementservicesinc.com/.

> himself/herself and his/her heirs, spouses, executors, assigns, and representatives) releases and forever discharges the Released Parties from all legal or equitable claims arising prior to February 5, 2024 and either asserted in or reasonably related to the Action, including all such claims and alleging unpaid wages or liquidated damages or costs or attorney's fees under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, or under any other federal, state, or local statute, regulation, rule, or common law theory.

*Id.* In addition, the back of each check will contain the following text:

> By signing this check, I agree that I am waiving any rights I might have under the Fair Labor Standards Act or state or local law arising and am releasing the Released Parties as defined in the settlement agreement for any claims I might have for unpaid wages or liquidated damages or costs or attorneys' fees under the FLSA or state or local law.

*Id.* at ¶ 5.

### E.    The Settlement May Be Approved in a Single Step.

Unlike class action settlements under Federal Rule of Civil Procedure 23 that involve a two-step court approval process, courts routinely approve FLSA settlements in one step.  As our Court of Appeals recently explained:

> Rule 23 also contains important post-certification protections that are notably absent in [FLSA] § 216(b). Because absent class members are not present in court, the court is authorized to issue various orders "to protect class members and fairly conduct the action." Fed. R. Civ. P. 23(d)(1)(B). The FLSA does not provide any analogous authority. Rule 23 also establishes a rigorous system surrounding the settlement of class actions in which absent class members are notified and provided an opportunity to opt-out and to object. Fed. R. Civ. P. 23(e). And before approval of the settlement, the court must conduct a hearing and find "it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). ***Once again, FLSA collective actions contain none of these protections.***

*Fischer v. Federal Express Corp.*, 42 F.4th 366, 377 (3rd Cir. 2022) (emphasis supplied; some internal citations omitted); *see also Haskett v. Uber Technologies, Inc.*, 780 Fed. Appx. 25, 27 (4th Cir. 2019) (FLSA "does not require a district court to notify potential claimants about a proposed settlement"); *Herbin v. PNC Financial Services Group, Inc.*, 2020 WL 429081, 2020

U.S. Dist. LEXIS 13095, *2 n.2 (W.D. Pa. Jan 27, 2020) (class action notice requirements "are not applicable" to review of FLSA collective settlements). Consistent with the above, this Court regularly reviews FLSA collective settlements in a single step. *See*, *e.g.*, *Goncalves v. AJC Construction Inc.*, 2022 WL 2985636, 2022 U.S. Dist. LEXIS 133995 (E.D. Pa. July 28, 2022); *Gravely v. PetroChoice, LLC*, 2022 WL 2316174, 2022 U.S. Dist. LEXIS 113746 (E.D. Pa. June 28, 2022); *Travis v. Asociacion Puertorriquenos En Marcha, Inc.*, 2020 WL 4059715, 2020 U.S. Dist. LEXIS 126762 (E.D. Pa. July 20, 2020).

## F. Approval of the Settlement is Warranted.

Although the Third Circuit has never addressed the issue, most district court judges in the Third Circuit opine (or, at least, assume) that judicial approval of FLSA collective settlements is required. *See, e.g., Baez-Medina v. The Judge Group, Inc.*, 2023 WL 4634087, 2023 U.S. Dist. LEXIS 124960 (E.D. Pa. July 20, 2023); *Bristow v. AmeriHealth Caritas*, 2023 U.S. Dist. LEXIS 92193 (E.D. Pa. May 5, 2023); *Brown v. Kadence Int'l, Inc.*, 2023 WL 2614587, 2023 U.S. Dist. LEXIS 49202 (E.D. Pa. Mar. 23, 2023); *Kyem v. Merakey USA*, 2022 WL 425584, 2022 U.S. Dist. LEXIS 24657 (E.D. Pa. Feb. 11, 2022); *but see Walker v. Marathon Petroleum Corp.*, 684 F. Supp. 3d 408 (W.D. Pa. 2023) (Ranjan, J.) (judicial review of collective FLSA settlement *not* required).

In *Brown*, *supra*, Judge Marston summarized the "three-step process" applicable to the review of FLSA collective settlements:

> Courts considering whether to approve settlement of an FLSA action follow a three-step process. First, the court considers whether "the settlement concerns a 'bona fide dispute.'" If it does, the court then considers whether the settlement is "fair and reasonable for the employees." And finally, the court considers whether the settlement "furthers the FLSA's implementation in the workplace."
> In determining whether there is a "*bona fide* dispute" between the employees and the employer, courts consider whether the dispute involves

7

legal or factual issues, "such as FLSA coverage or computation of back wages." A bona fide dispute exists when "the dispute ... fall[s] within the contours of the FLSA and there [is] evidence of the defendant's intent to reject or actual rejection of th[e] claim when it is presented."

In determining whether a settlement is fair and reasonable, courts in the Third Circuit use the factors identified by the Third Circuit in *Girsh v. Jepson* to evaluate whether a class action settlement is fair and reasonable.

And finally, in determining whether the settlement advances the purposes of the FLSA, courts consider factors such as whether the settlement agreement is narrowly tailored such that it resolves only the employees' wage and hour claims and whether the agreement contains a confidentiality clause that would frustrate the FLSA's "informational objective."

*Id.* at *15-16 (internal citations omitted).[8]

Here, the pertinent three-step process warrants approval of the settlement:

### 1.    The Settlement Resolves a *Bona Fide* FLSA Dispute.

A *bona fide* dispute exists "when 'the dispute ... fall[s] within the contours of the FLSA and there [is] evidence of the defendant's intent to reject or actual rejection of th[e] claim when it is presented.'" *Brown*, 2023 U.S. Dist. LEXIS 49202, at *15 (quoting *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016)). Such is the case here. J&J has retained able defense counsel and consistently denied liability. *See, e.g.*, Answer (Doc. 6).

### 2.    The Settlement is "Fair and Reasonable."

"In determining whether a settlement is fair and reasonable, courts in the Third Circuit use the factors identified by the Third Circuit in *Girsh v. Jepson* to evaluate whether a class action settlement is fair and reasonable." *Brown*, 2023 U.S. Dist. LEXIS 49202, at *15-16. Here, the *Girsh* factors favor approval:

<u>*Girsh Factor 1 – Complexity, Expense and Likely Duration of the Litigation*</u>: This factor

---

[8]  In *Dhimitri v. Mozzeria, LLC*, 2019 U.S. Dist. LELXIS 92982 (E.D. Pa. May 29, 2019) (Bartle, J.), Your Honor applied the three-step process in approving a *non-collective* FLSA settlement.

favors approval because, absent settlement, this litigation would entail a series of complex litigation events, including, *inter alia*, the resolution of J&J's anticipated "decertification" and summary judgment motions and, if summary judgment is denied, the resolution of pretrial motions addressing the proper scope of "representative" evidence at trial. Next, the representative plaintiffs would be required to travel to Philadelphia from throughout the country to testify at trial. It is likely that some plaintiffs' travel expenses would approach – or even exceed – their potential recoveries.

*Girsh Factor 2 – Reaction of the Class to the Settlement*: This factor – which is geared to Rule 23's "two-step" process whereby absent class members are given an opportunity to object to the settlement – seems inapplicable to FLSA settlements settled on behalf of plaintiffs who *already* are pursuing claims and who have filed consent forms stating: "I understand that I will be bound by the judgment of the Court on all issues in this action including the fairness of any settlement." *See* Docs. 13, 15, 18-20, 22, 24-27.

*Girsh Factor 3 – Stage of Proceedings and Amount of Discovery Completed*: This factor – which addresses "whether counsel had an adequate appreciation of the merits of the case before negotiating," *see In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) – favors approval. Here, plaintiffs' lawyers – relying on detailed payroll data obtained through discovery – conducted a full damages analysis prior to settlement. *See* Buenker Dcl. (Doc. 36-2) at ¶¶ 5-8. In addition, plaintiffs' lawyers had spoken with many of the plaintiffs regarding their individual work routines and experiences as J&J merchandisers. *See id.* at ¶ 7.

*Girsh Factors 4 and 5 – Risk of Establishing Liability and Proving Damages*: These factors "examine what the potential rewards (or downside) of the litigation had class counsel elected to litigate the claims rather than settle them." *In re GMC Pick-Up Truck Fuel Tank*

9

*Products Liability Litig.*, 55 F.3d 768, 814 (3d Cir. 1995). These favors settlement because, as already discussed, continued litigation would pose a significant risk that plaintiffs might recover nothing or less than the settlement amount due to J&J's various defenses to both the merits and damages claims. *See* pp. 2-4 *supra*.

<u>*Girsh Factor 6 – Risks of Maintaining the Class Through Trial*</u>: This favors settlement because, absent settlement, J&J would move to "decertify" the collective by arguing that plaintiffs' individual work circumstances are sufficiently pronounced to render a collective trial unmanageable. *See Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536-37 (3d Cir. 2012) (discussing decertification standard). While plaintiffs believe any such motion would fail, it cannot be denied that this litigation – like almost any collective action – carries some risk of decertification. *See also Altnor v. Preferred Freezer Services, Inc.*, 197 F. Supp. 3d 746, 762 (E.D. Pa. 2016) (explaining that this factor "deserves only minimal consideration" in collective FLSA settlement).

<u>*Girsh Factor 7 – Ability of Defendant to Withstand a Greater Judgment*</u>: This factor is neutral where, as here, "the parties do not allege that [J&J] has any degree of financial instability as a justification for the settlement's amount." *Altnor*, 197 F. Supp. 3d at 762.

<u>*Girsh Factors 8-9 – The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks of Litigation*</u>: These factors "test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). The question is whether, in light of these risks, the settlement class is getting "good value." *Id.* Here, the settlement provides an excellent result. While plaintiffs' lawyers believe plaintiffs can prevail at trial, they also recognize the possibility

that plaintiffs could lose or win less than the settlement due to the various defenses posed by J&J.  *See* pp. 2-4 *supra*.  The instant settlement avoids such risks, while, at the same time, creating a $505,000 settlement fund[9] that approximates the overtime wages plaintiffs would recover by proving that they worked 11 hours per day during the maximum three-year limitations period.  *See* Buenker Dcl. (Doc. 36-2) at ¶ 7.  It is quite possible that plaintiffs – who were scheduled to work only 10 hours per day and, according to J&J, sometimes worked fewer than 10 hours – would recover *less* money if they went to trial and won.

   <u>*Summary of the Girsh Factors:*</u>  In sum, the Court should deem the settlement "fair and reasonable" under the *Girsh* factors.

###    3.  The Settlement "Furthers the FLSA's Implementation."

   In determining whether the settlement furthers the FLSA's implementation in the workplace, courts consider factors "such as whether the settlement agreement is narrowly tailored such that it resolves only the employees' wage and hour claims and whether the agreement contains a confidentiality clause that would frustrate the FLSA's 'informational objective.'"  *Brown*, 2023 U.S. Dist. LEXIS 49202, at *16; *see also Travis*, 2020 U.S. Dist. LEXIS 126762, at *6 (settlements further FLSA's implementation where they lack "'overly burdensome confidentiality agreements, overbroad release language, or sealed filings.'").  The instant settlement avoids such pitfalls.  It is publicly filed and lacks any confidentiality provision.  *See generally* Agreement (Doc. 36-1).  Moreover, the release is strictly limited to wage and hour claims.  *See id.* at ¶ 4.  Such limited releases do not frustrate the FLSA.  *See*, *e.g., Devine*, 2021

---

[9]  As Judge Robreno has observed, in evaluating an FLSA settlement's fairness, "the relevant settlement amount is the total amount of the settlement even though the total settlement amount includes attorney's fees."  *Solkoff v. Pennsylvania State University*, 435 F. Supp. 3d 646, 655 (E.D. Pa. 2020); *accord Devine v. Northeast Treatment Centers*, 2021 WL 4803819, 2021 U.S. Dist. LEXIS 197924, *5-6 (E.D. Pa. Oct. 14, 2021).

U.S. Dist. LEXIS 197924, at *21-23; *Travis*, 2020 U.S. Dist. LEXIS 126762, at *6.

**In summary**, for the reasons explained in subsections 1-3 above, the instant settlement should be approved pursuant to the "three-step process" applicable to the judicial review of FLSA collective settlements.

### 4.    Approval of the Attorney's Fees/Expenses is Warranted.

In addition, "courts reviewing an FLSA settlement must ensure that the attorneys' fees and expenses sought to be recovered by plaintiffs' counsel are reasonable." *Shaw v. Tabor Community Partners*, 2020 U.S. Dist. LEXIS 228653, at *1, n.1 (E.D. Pa. Dec. 2, 2020). Here, the settlement contemplates a payment to Plaintiffs' Counsel of $182,000 in combined attorneys' fees, litigation expenses, and settlement administration costs. *See* Agreement (Doc. 36-1) at ¶ 7. After reducing this amount by $21,018 in costs and expenses, *see* Buenker Decl. (Doc. 36-2) at ¶ 14 ($6,424 in costs); Winebrake Decl. (Doc. 36-3) at ¶ 20 ($14,594 in costs), the requested attorney's fee of **160,982** constitutes approximately **31.88%** of the $505,000 settlement fund.

Some courts reviewing attorney's fees associated with settled FLSA collective actions have reviewed the fees "reasonableness" based on the seven "*Gunter* factors" applicable to fee requests in Rule 23 class action settlements. *See*, *e.g.*, *Devine*, 2021 U.S. Dist. LEXIS 197924, at *17-19 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir. 2000)). Here, the *Gunter* factors favor approval of the requested fee:

<u>*Gunter* Factor 1 – *Size of the Fund Created and the Number of Persons Benefited*</u>: This factor favors approval because, as already discussed, the settlement fund approximates the overtime wages plaintiffs might expect if they prevailed at trial.

<u>*Gunter* Factor 2 – *Presence or Absence of Substantial Objections by Class Members*</u>: The instant settlement – unlike a Rule 23 class action settlement – does not entail a notice and

objection process.  *See* pp. 6-7 *supra*.  Thus, this factor is neutral.

*Gunter Factor 3 – Skill and Efficiency of the Attorneys Involved*:  This factor favors

approval because class counsel have efficiently guided this matter to a fair resolution and are

experienced employment lawyers.  *See* Buenker Dcl. (Doc. 36-3) at ¶¶ 3-4; Winebrake Dcl.

(Doc. 36-2) at ¶¶ 4-14.

*Gunter Factor 4 – Complexity and Duration of the Litigation*:  This factor favors

approval because, as previously discussed, this litigation has been actively litigated and involves

complex questions of disputed law.

*Gunter Factor 5 – Risk of Nonpayment*:  This factor favors approval because plaintiffs'

lawyers work on a contingency fee basis, making non-payment a real risk.  *See* Buenker Dcl.

(Doc. 36-3) at ¶ 10; Winebrake Dcl. (Doc. 36-2) at ¶ 3.

*Gunter Factor 6 – Amount of Time Devoted to the Case*:  This factor favors approval

because class counsel has dedicated 208.1 attorney hours to this litigation.  *See* Buenker Dcl.

(Doc. 36-3) at ¶ 13 (143.8 hours); Winebrake Dcl. (Doc. 36-2) at ¶ 19 (64.3 hours).

*Gunter Factor 7 – Awards in Similar Cases*:  This factor favors approval because the

requested $160,982 attorney's fee constitutes 31.88% of the $505,000 settlement fund.  In

class/collective lawsuits alleging wage and hour violations, Pennsylvania judges regularly

approve fees equaling one-third of the settlement fund.  *See*, *e.g.*, *Torres v. BrandSafway*

*Industries LLC*, 2023 U.S. Dist. LEXIS 115870, *4 (W.D. Pa. June 14, 2024) (citing cases and

observing that "33.33% percentage of the fund fee awards often approved in wage and hour

class/collective action settlements"); *Katz v. DNC Services Corp.*, 2024 WL 454942, 2024 U.S.

Dist. LEXIS 20629, *41 (E.D. Pa. Feb. 6, 2024) ("33 1/3 % of the settlement fund is consistent

with percentages in similar class actions"); *Creed v. Benco Dental Supply Co.*, 2013 U.S. Dist.

LEXIS 132911, *17 (M.D. Pa. Sept. 17, 2013) (one-third fee recovery is "consistent with similar settlements throughout the Third Circuit").[10]

### 5. Approval of the Service Awards is Warranted.

Finally, Kelly, Monday, and Williams each seek $7,500 service awards. *See* Agreement (Doc. 36-1) at ¶ 6. In class/collective litigation, service award payments "compensate named

---

[10] While not required, courts within the Third Circuit may undertake a "lodestar cross-check" when approving fees under the percentage of the fund method. Such a review, however, is "not the primary analysis in common fund cases." *Young v. Tri County Security Agency, Inc.*, 2014 WL 1806881, 2014 U.S. Dist. LEXIS 62931, *26 (E.D. Pa. May 7, 2014), and "'is not mandatory,'" *Tumpa v. IOC-PA, LLC*, 2021 WL 62144, 2021 U.S. Dist. LEXIS 2806, *32 (W.D. Pa. Jan 7, 2021). In fact, the cross-check's relevance "is increasingly challenged by the realities of today's legal practice," *Tompkins v. Farmers Insurance Exchange*, 2017 WL 4284114, 2017 U.S. Dist. LEXIS 158478, *28 n.4 (E.D. Pa. Sept. 27, 2017), with various courts warning that any lodestar analysis discourages the efficient resolution of class action litigation, *see, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (percentage of the fund method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation. In contrast, the lodestar creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line-item fee audits.") (cleaned up); *see also Sala v. National Railroad Passenger Corp.*, 128 F.R.D. 210, 215 (E.D. Pa. 1989) ("[I]t would be the height of folly to penalize an efficient attorney for settling a case on the ground that less total hours were expended in the litigation").

When performed, lodestar crosschecks "need entail neither mathematical precision nor bean-counting." *In re Rite Aid Corp. Securities Litig.*, 396 F.3d 294, 306 (3d Cir. 2005). Here, if the Court performs a lodestar crosscheck, it will see that Plaintiffs' lawyers combined fee lodestar stands at $154,598 utilizing the hourly rates described in the Philadelphia Community Legal Services fee schedule. *See* Buenker Dcl. (Doc. 36-2) at ¶ 13 (describing $112,164 lodestar); Winebrake Dcl. (Doc. 36-3) at ¶ 20 (describing $42,794 lodestar). Thus, the requested $160,982 attorney's fee yields a lodestar multiplier of **1.04** ($160,982 *divided by* $154,598). This lodestar multiplier lends further support to the requested fee's reasonableness. As a general matter, the Third Circuit has observed that lodestar "multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998). This holds true in the wage and hour arena. *See, e.g.*, *Wood v. AmeriHealth Caritas Services, LLC*, 2020 WL 1694549, 2020 U.S. Dist. LEXIS 60787, *29 (E.D. Pa. Apr. 7, 2020) (1.89 multiplier); *Arrington v. Optimum Healthcare IT, LLC*, 2018 WL 5631625, 2018 U.S. Dist. LEXIS 186192, *29-30 (E.D. Pa. Oct. 31, 2018) (5.3 multiplier); *Brown v. Progressions Behavioral Health Services, Inc.*, 2017 WL 2986300, 2017 U.S. Dist. LEXIS 108487, *17-18 (E.D. Pa. July 13, 2017) (3.1 multiplier).

plaintiffs for the services they provided and the risks they incurred during the course of litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan v. DB Invests., Inc.*, 667 F.3d 273, 333 n. 65 (3d Cir. 2011).  Service awards

> are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers. . . . Although this Court has no reason to believe that [the defendant] has or will take retaliatory action towards either [Plaintiff] or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-188 (W.D.N.Y. 2005) (internal citations omitted); *accord Myers v. Jani-King of Phila., Inc.*, 2019 WL 4034736, 2019 U.S. Dist. LEXIS 144929, *26 (E.D. Pa. Aug. 26, 2019).

Here, the requested service awards compare favorably with awards approved by this Court in other wage and hour class/collective actions.  As Judge Robreno has observed, this Court has approved service awards in the "general range" of 3% of the total settlement fund. *Devine*, 2021 U.S. Dist. LEXIS 197924, at *24-24 (citing cases); *see also Johnson v. Free State Management Group, LLC*, 2021 WL 2711528, 2021 U.S. Dist. LEXIS 123376, *21-22 (E.D. Pa. July 1, 2021) (citing cases approving of service awards ranging from 3.1%-3.5% of the total settlement amount).  Here, each requested $7,500 award constitutes only 1.49% ($7,500 *divided* by $505,000) of the settlement fund.

The requested service awards also fall below the approved service awards in some other wage and hour settlements without reference to the total settlement fund.  *See*, *e.g.*, *Green v. Amazon.com, Inc.*, 2024 U.S. Dist. LEXIS 107107, *3 (E.D. Pa. June 14, 2024) ($15,000); *Hall v. Accolade, Inc.*, 2020 WL 1477688, 2020 U.S. Dist. LEXIS 52632, *25-26 (E.D. Pa. Mar. 25,

2020) ($10,000); *Layer v. Trinity Health Corp.*, 2019 U.S. Dist. LEXIS 185211, *3 (E.D. Pa. Oct. 24, 2019) ($10,000); *Myers*, 2019 WL 4034736, 2019 U.S. Dist. LEXIS 144929, *25-26 ($10,000); *Devlin v. Ferrandino & Son, Inc.,* 2016 WL 7178338,  2016 U.S. Dist. LEXIS 170823, *28-29 (E.D. Pa. Dec. 9, 2016) ($7,500); *Schaub v. Chesapeake & Delaware Brewing Holdings*, 2016 U.S. Dist. LEXIS 157203, *14-15 (E.D. Pa. Nov. 14, 2016) ($9,000); *Cikra v. Lami Products, LLC*, 2016 U.S. Dist. LEXIS 156798, *4-5 (E.D. Pa. Nov. 10, 2016) ($12,500); *In re Janney Montgomery Scott Financial Consultant Litig.*, 2009 U.S. Dist. LEXIS 60790, *34-37 (E.D. Pa. July 19, 2009) ($20,000); *Godshall v. Franklin Mint Co.*, 2004 U.S. Dist. LEXIS 23976, *19-21 (E.D. Pa. Dec. 1, 2004) ($20,000).

### G.    Conclusion.

For the above reasons, plaintiffs ask the Court to approve the settlement.

Date:  August 2, 2024                                              Respectfully,

_____
Peter Winebrake
Michelle L. Tolodziecki
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

Josef Buenker
The Buenker Law Firm
2950 North Loop West, Suite 500
Houston, Texas 77092
(866) 283-6537

*Attorneys for Plaintiffs*