```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN KELLY, et al.              :       CIVIL ACTION
                                :
     v.                         :
                                :
J&J SERVICE SOLUTIONS LLC       :       NO. 23-2854
```

                              MEMORANDUM

Bartle, J.                                              August 20, 2024

      Originating plaintiffs John Kelly, Quentin Monday, and Ranique Williams have sued their employer, J&J Service Solutions LLC ("J&J") for violating the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA").  J&J has agreed to settle this collective action for $505,000 to resolve the wage and hour claims of originating plaintiffs and 128 other employees and former employees who have affirmatively joined this action.

      Before the court is the motion of plaintiffs John Kelly, Quentin Monday, and Ranique Williams for approval of the FLSA settlement (Doc. # 35).

<div align="center">I</div>

      J&J Service Solutions LLC provides merchandising services to retail stores and other customers.  It is headquartered in Columbia, Pennsylvania.  It employs merchandisers who travel to customers nationwide to receive merchandise, stock shelves, and assemble displays on behalf of J&J's customers.

J&J pays its merchandisers through a day-rate plan, that is it pays each merchandiser a fixed rate per day regardless of the number of hours the merchandiser worked. The originating plaintiffs worked for J&J from 2021 through 2023 and each regularly worked over 60 hours per week. Plaintiffs allege that, when a merchandiser worked over forty hours in a week, J&J failed to pay overtime as required under 29 U.S.C. § 207(a)(1).[1] The FLSA requires that employers pay overtime to employees paid on a day-rate basis. See 29 C.F.R. § 778.112.

On October 20, 2023, the parties submitted a joint stipulation for conditional certification of the FLSA collective and approval of the notice form and procedures (Doc. # 16). The class was certified and notice was approved on October 24, 2023 (Doc. # 7). The putative collective action consists of:

> All individuals who were employed by Defendant and who, during any week within the past three years, were paid by Defendant or any related business entity to perform merchandising work at any retail stores during any time since December 1, 2020.

Each putative collective member was required to complete a consent form and return it within seventy days after the form

---

1. To determine how much overtime pay is due to an employee on a day-rate plan, an employer must first calculate his or her regular hourly rate by dividing the total wages made by the hours worked. An employee is owed an extra payment of half the hourly rate multiplied by the number of hours over forty that the employee worked.

was initially mailed to him or her. 128 individuals opted into the collective action.

After plaintiffs opted in, J&J provided all available data pertaining to the compensation of those plaintiffs since December 1, 2020. Thereafter, the parties began to participate in settlement negotiations.

The parties reached a settlement on July 26, 2024 (Doc. # 36-1). As noted, J&J agreed to make a total payment of $505,000. Subject to the court's approval, plaintiffs will receive $300,500, plaintiffs' counsel will receive $182,000 in attorneys' fees, litigation expenses, and settlement administration expenses, and each of the three originating plaintiffs will receive a service award of $7,500. The parties have calculated the amount due to each of the 131 plaintiffs after deducting the proposed fees, expenses and service awards described. Upon accepting payment, plaintiffs are required to:

> Release[] and forever discharge[] the [defendant and any of its parents, franchisors, partners, subsidiaries, affiliates, predecessors, agents, employees, directors, officers, insurers, attorneys, successors, heirs, spouses, administrators, executors, assigns, representatives, or other persons or entities acting on Defendant's behalf] from all legal or equitable claims arising prior to February 5, 2024 and either asserted in or reasonably related to the Action, including all such claims and alleging unpaid wages or liquidated damages or costs or attorneys fees' under the Fair Labor Standards Act, 29

>      U.S.C. §§ 201, et seq., or under any other
>      federal, state, or local statute,
>      regulation, rule, or common law theory.

Collective Action Settlement Agreement at 3, Kelly v. J&J Serv. Sols., LLC, Civ. A. No. 23-2854 (E.D. Pa. Aug. 2, 2024) (Doc. # 36-1).

## II

To approve a proposed FLSA settlement, the court must determine whether it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." Cuttic v. Crozer-Chester Med. Ctr., 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982) (internal quotation marks omitted)). If the court determines that the settlement resolves a "bona fide" dispute, the court must engage in a two-part fairness inquiry: first, whether the settlement is fair and reasonable to the employees, and second, "whether the agreement furthers or impermissibly frustrates the implementation of the FLSA in the workplace." Mabry v. Hildebrandt, Civ. A. No. 14-5525, 2015 WL 5025810, at *2 (E.D. Pa. Aug. 24, 2015).

A "bona fide" dispute exists when there is evidence that the defendant has an intent to reject plaintiffs' claim when it is presented, and that such claim falls within the ambit

of the FLSA. Altnor v. Preferred Freezer Servs., Inc., 197 F. Supp. 3d 746, 763 (E.D. Pa. 2016). Plaintiffs' claims concern J&J's failure to pay them overtime for hours worked beyond forty each week. The FLSA is directly concerned with the payment of overtime for employees paid via a day-rate plan. See 29 C.F.R. § 778.112. Additionally, J&J's answer in this case denies liability. This shows it intended to reject plaintiffs' claim that it owes them overtime. This is a bona fide dispute.

Next, the court turns to whether the proposed settlement is "fair and reasonable" to the employees. In collective FLSA actions, district courts in this circuit typically apply the nine-factor test outlined in Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975), to assess the fairness and reasonableness of any proposed settlement. See, e.g., Altnor, 197 F. Supp. 3d at 764; Howard v. Phila. Hous. Auth., 197 F. Supp. 3d 773, 777 n.1 (E.D. Pa. 2016). Those factors are:

> (1) The complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the

>               settlement fund to a possible recovery in
>               light of all the attendant risks of
>               litigation.

In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 534-35 (3d Cir. 2004) (citing Girsh, 521 F.2d at 156-57).

The first Girsh factor is the complexity, expense, and likely duration of the litigation. If the court does not approve the settlement, J&J would likely file a motion to "decertify" the class as well as a motion for summary judgment. The parties would likely also need to litigate the scope of what constitutes "representative" evidence for presentation at trial. Additionally, plaintiffs reside throughout the United States, so traveling for the purposes of trial would be very expensive. This factor weighs in favor of settlement.

The second Girsh factor is the "reaction of the class to the settlement." As collective FLSA settlements require that plaintiffs opt into the settlement, the objections process of Rule 23 of the Federal Rules of Civil Procedure is not applicable.

Under the third Girsh factor, the court considers the stage of the proceedings and the amount of discovery completed. This factor is meant to address whether counsel had an "adequate appreciation of the merits of the case before negotiating." In re Cendant Corp. Litig., 264 F.3d 201, 235 (3d Cir. 2001). Plaintiffs' lawyers negotiated with defense counsel with the

benefit of detailed payroll data of each plaintiff. They were able to complete a full damages analysis prior to settlement. This factor weighs in favor of settlement.

The fourth, fifth, and sixth Girsh factors require the court to weigh the potential risks that plaintiffs would confront in establishing liability, establishing damages, and maintaining their litigation through trial. J&J contested liability, and therefore, plaintiffs, in litigating the issue, experience risks in light of that factor. Similarly, to prove damages, plaintiffs would have to prove the number of hours each opt-in plaintiff worked each week during his or her employment. Finally, J&J would likely have filed a motion to "decertify." If such a motion was successful, plaintiffs run the risk of needing to litigate these claims as individual actions and thus multiply the litigation's time and expense. These factors weigh in favor of settlement.

The seventh Girsh factor focuses on "whether the defendants could withstand a judgment for an amount significantly greater" than the settlement reached. Plaintiffs concede this factor as neutral. Parties do not allege that J&J "has any degree of financial instability as a justification for the settlement's amount." Altnor, 197 F. Supp. 3d at 762.

The final two Girsh factors are the range of reasonableness of the settlement in light of both the best

possible recovery and the attendant risks of litigation. A $505,000 settlement, paid out to the 131 plaintiffs, approximates the damages that plaintiffs would receive if they had proven at trial that they worked 11 hours per day, or 55 hours per week. As plaintiffs were scheduled to work only 10 hours per day, and according to J&J, often worked less, it is possible that, due to the risks of litigation, plaintiffs could recover less than this settlement pays. These two factors weigh in favor of settlement.

After consideration of all these factors, the court finds the settlement in the amount of $505,000 to be fair and reasonable.

Even if the settlement is otherwise fair and reasonable, the court must decide whether the settlement would impermissibly frustrate the implementation of the FLSA in the workplace. Courts must take into account whether the proposed settlement contains overbroad waiver provisions, a confidentiality agreement, or whether parties attempted to keep the agreement private. Mejia v. KVK-Tech, Inc., Civ. A. No. 19-4841, 2020 WL 5292074, at *3 (E.D. Pa. Sept. 4, 2020). The agreement does not contain a confidentiality agreement and parties have not filed any materials under seal.

Finally, the court must review the release provision of the settlement agreement. A waiver provision is overbroad

when it is prospective or requires that plaintiffs release unrelated claims. See, e.g., Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516, 532-33 (E.D. Pa. 2016). While this agreement does contain a waiver provision, plaintiffs here will simply waive any wage and hour and related claims that would have arisen prior to February 5, 2024. The release provision here is appropriate.

### III

The FLSA states that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In this action, plaintiffs seek a payment of $160,982 in attorneys' fees, $6,424 in costs incurred by the Buenker Law Firm, $594 in costs incurred by Winebrake & Santillo, LLC, $14,000 for settlement administration expenses, and $7,500 for service awards to each of the three originating plaintiffs. In total, these fees, costs and awards total $204,500.

In wage and hour cases such as this, district courts in our circuit use the percentage-of-recovery method and award a fixed portion of the settlement fund to counsel. See, e.g., Mejia, 2020 WL 5292074, at *4. An appropriate percentage ranges from roughly 20 to 45%. Id. In this action, plaintiffs seek

$160,982 in attorneys' fees, which is approximately 32% of the $505,000 settlement.

To determine whether such percentage is appropriate, the court may also consider the following so-called Gunter factors:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, and (7) the awards in similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000) (citing In re Prudential Ins. Co. of Am. Sales Pracs. Litig. Agent Actions, 148 F.3d 283, 336-40 (3d Cir. 1997)).

First, the court will take into account the size of the fund created and the number of beneficiaries. The settlement totals $505,000 and benefits 131 plaintiffs. This settlement compensates these plaintiffs for overtime as though they worked eleven hours each day, which is the high range of hours typically worked per day by J&J employees. Additionally, this recovery compensates plaintiffs for damages incurred over the past three years, rather than FLSA's presumptive two-year statute of limitations. This factor suggests approval of attorneys' fees are appropriate.

As class members opt into the settlement rather than objecting to the settlement, the second factor is not relevant to collective FLSA actions.

The third Gunter factor is the skill and efficiency of the attorneys involved. Josef F. Buenker, attorney at the Buenker Law Firm, has represented plaintiffs in FLSA cases since 2004, has filed hundreds of FLSA cases, and has tried approximately twenty such cases to verdict. Winebrake & Santillo was founded in January of 2007 and focuses on representing plaintiffs in FLSA actions. Peter Winebrake, attorney at Winebrake & Santillo, has tried at least fifteen federal cases to verdict. Plaintiffs' counsel is very experienced and have efficiently settled this action. This factor shows that approval is appropriate.

The fourth Gunter factor is the complexity and duration of the litigation. As noted above, J&J has denied liability and, should the case continue, plaintiffs anticipate motions for "decertification" and summary judgment. In settling this case, plaintiffs were provided with discovery as to the damages suffered by plaintiffs who have opted into the litigation. This factor favors approval of attorneys' fees.

The court, pursuant to the fifth Gunter factor, considers the risk of nonpayment. Counsel worked on a contingency fee basis. Non-payment was a real risk faced by

-11-

plaintiffs' counsel and therefore, this factor weighs in favor of approval of the attorneys' fees requested.

The court turns to the sixth <u>Gunter</u> factor, which concerns the amount of time lead counsel devoted to this action. Buenker has certified that he has worked 143.8 hours on this litigation. Winebrake certified that he and his co-worker, Michelle Tolodziecki, spent a total of 64.3 hours on this litigation. This amount of time is reasonable. Lead counsel's time supports this award of the attorneys' fees.

Finally, under the seventh <u>Gunter</u> factor, the court will compare this proposed award to awards in similar cases. The $160,982 fee requested is 32% of the $505,000 settlement fund. This district regularly approves attorneys' fees that equal one-third of the settlement fund. <u>See, e.g.</u>, <u>Rouse v. Comcast Corp.</u>, Civ. A. No. 14-1115, 2015 WL 1725721, at *13 (E.D. Pa. Apr. 15, 2015); <u>Leap v. Yoshida</u>, Civ. A. No. 14-3650, 2015 WL 619908, at *4 (E.D. Pa. Feb. 12, 2015).

The court finds that the attorneys' fees requested are reasonable and will be approved.

"[T]here is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of his <u>reasonable</u> litigation expenses from that fund." <u>Lachance v. Harrington</u>, 965 F. Supp. 630, 651 (E.D. Pa. 1997). The Buenker Law Firm has incurred $6,424.11 in expenses

relating to the costs paid to Settlement Services, Inc. for distribution of the court-approved notice and management of the opt-in process.  Winebrake and Santillo has incurred $594 in fees relating to filing and service as well as an additional $14,000 payment to Settlement Services, Inc. for administration of the settlement. Such expenses are reasonable and the court will approve the reimbursement of such costs.

<div style="text-align:center">IV</div>

Service awards are common in class actions resulting in a common fund and are meant to compensate named plaintiffs for the risk they incur during the course of class action litigation.  Alvarez v. BI Inc., Civ. A. No. 16-2705, 2020 WL 1694294, at *6 (E.D. Pa. Apr. 6, 2020).  The court must identify a "substantial basis" to demonstrate that the plaintiffs provided services for the class and incurred risks in doing so. Id.

The originating plaintiffs provided a service to the class as their action permitted the collective FLSA action to move forward.  Additionally, these three plaintiffs have incurred the risk of adverse action against their current and future employers through lending their names to this litigation. See Myers v. Jani-King of Phila., Inc., Civ. A. No. 09-1738, 2019 WL 4034736, at *10 (E.D. Pa. Aug. 26, 2019).

An award of $7,500 per originating plaintiff is in line with service payments in similar cases within this district.  See id.; see also Alvarez, 2020 WL 1694294, at *7. The court will approve the payment of these service awards to the three originating plaintiffs.

<div align="center">V</div>

Accordingly, the court will approve the settlement in its entirety and will enter an order to this effect.